# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Gwendolyn Baldwin, | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil No. 06-1956 (GK)** |
| | ) | |
| v. | ) | |
| | ) | |
| Superior Court of the District | ) | |
| Of Columbia, | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

Defendant Superior Court for the District of Columbia ("the Court"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(5) and (6) and 56, hereby moves this Court to dismiss the plaintiff's Complaint with prejudice and/or enter summary judgment in its favor.[1] A Memorandum of Points and Authorities and a proposed order is attached hereto.

Pursuant to Local Rule 7, undersigned counsel is not required to obtain plaintiff's consent to the instant dispositive motion.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief

---

[1] The defendant does not waive service by filing the instant motion.

General Litigation Section III

_____/s/_____

DANA K. DELORENZO
Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 19, 2007, a copy of the foregoing Motion, Memorandum of Points and Authorities and proposed order was mailed postage prepaid to:

Gwendolyn Baldwin
1427A First Street, NW
Washington, DC 20001

*/s/ Dana K. DeLorenzo /s/*_____
Dana K. DeLorenzo
Assistant Attorney General

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Gwendolyn Baldwin, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 06-1956 (GK) |
| v. | ) | |
| | ) | |
| Superior Court of the District | ) | |
| Of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

Defendant Superior Court for the District of Columbia ("defendant"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(5) and (6) and 56, hereby moves this Court to dismiss the plaintiff's Complaint with prejudice and/or enter summary judgment in its favor for the following reasons: 1) the Superior Court is not a suable entity; 2) the plaintiff failed to effectuate proper service on the defendant; 3) the Complaint does not comply with Fed. R. Civ. P. 8(a); 4) the statute of limitations expired on the plaintiff's claims; 5) *res judicata* bars the plaintiff's claims; and 6) this Court lacks subject matter jurisdiction.   In support of the relief requested herein, the Court states as follows:

Ms. Baldwin began her non-judicial employment with the Superior Court of the District of Columbia in 1988.  In 1994, she was a probation assistant.  She was terminated as an employee of the D.C. Courts on August 26, 1994.  The plaintiff subsequently appealed her termination, utilizing the procedures available to non-judicial courts employees in the Comprehensive Personnel Policies.  Hearing Officer Henry L. Jalette sustained plaintiff's employment termination on February 10, 1995.  (*See In the Matter of Adverse Action Appeal by*

*Gwendolyn M. Baldwin*, Findings of Fact, Conclusions and Recommendations, attached hereto as Exhibit A.)  After a hearing, where Ms. Baldwin was provided an opportunity "to be heard, to present evidence, to examine and cross-examine witnesses, and to make oral argument"[2] the Hearing Officer made the following findings:  "[F]rom June 22 to the date of her termination [in August 1994], [the plaintiff] did not report to work and was absent without leave."  (*Id.* at 6.)  According to the record, in 1994, the plaintiff had 553 hours of extended absence without leave.  (*Id.* at 7.)  The plaintiff did "not contest the fact that she was absent from work on the dates specified by the Court."  (*Id.* at 3.)  However, she claimed that she was hospitalized for bi-polar disorder, and she submitted documentation verifying hospitalization for part of that time period.  (*Id.*)

Based on the evidence before him, the Hearing Officer concluded that the plaintiff's termination based on her excessive absences "was legally justified and [there was] no procedural irregularity."  (*Id.* at 7.)  In response to the plaintiff's argument that "she was terminated because she was sick and that the Court may not terminate her for such a reason," the Hearing Officer concluded that the plaintiff had cited "no legal authority for her position."  (*Id.*)

The plaintiff also claimed before the Hearing Officer that she was not given notice of her termination.  However, the Hearing Officer concluded that "the fact that [Ms. Baldwin] claims not to have received the memoranda addressed to her is immaterial [because] the memoranda were addressed to [the plaintiff] at the address she had supplied as her place of residence.  [The plaintiff] was accordingly on constructive notice."  (Exhibit A at 7.)  On March 2, 1995, Ulysses B. Hammond, Executive Officer of the D.C. Courts, accepted the recommendation of the Hearing Officer.  (Exhibit B.)

---

[2] Exhibit A at Preliminary Statement.

More than ten (10) years *after* the Hearing Officer's decision sustaining the plaintiff's termination, on November 15, 2006, the plaintiff filed the instant Complaint.[3]  In it, she named only the Superior Court for the District of Columbia as a defendant.  The Complaint and related attachments appear to allege that, in 1994, the plaintiff was wrongfully terminated by the Court while she was hospitalized at Bay Cove Mental Health Center, which is located in Massachusetts.  She also appears to claim that she had no notice of her termination.

### Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted when it appears that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief.  *Conley v. Gibson*, 355 U.S. 41, 45 (1957).  The movant, therefore, is entitled to judgment if there are no allegations in the complaint that, even if proven, would provide a basis for recovery.  *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987).

Although the non-moving party enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations of his complaint, bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of a motion under Rule 12(b)(6).  *Id.*  The court need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint, "[n]or must the court accept legal conclusions cast in the form of factual allegations."  *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

---

[3] The affidavit that is in the Court file indicates that David Luria, alleged to be an attorney advisor, was served on behalf of the Court.  (Exhibit C.)  However, there is nothing in the affidavit to show that Mr. Luria was authorized to accept service of process on behalf of the Court or the District of Columbia.

On the other hand, summary judgment must be granted if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Although the movant has the burden of demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law, the "moving party is not required to support its motion for summary judgment with 'affidavits or other similar materials *negating* the opponent's claim.'" *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033 (D.C. Cir. 2003). At this point, then, "the burden shifts to the non-movant to 'come forward with 'specific facts showing that there is a genuine issue for trial.'" *Shaw v. District of Columbia*, 2006 U.S. Dist. LEXIS 26904 *14 (internal citations omitted).

Fed. R. Civ. P. 56(e) reinforces that the plaintiff's response to the defendant's Motion "may not rest upon the mere allegations or denials of the adverse party's pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial." To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). Moreover, if the plaintiff "does not so respond, summary judgment, if appropriate, shall be entered" against her. Fed. R. Civ. P. 56(e).

By either burden of proof, the plaintiff's claims against the defendant cannot stand. Therefore, the Court should grant the instant Motion.

*Argument*

**1.    THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA IS *NON SUI JURIS*.**

In *Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, *8 (D.D.C. 2000), the Honorable Ricardo M. Urbina concluded, after reviewing precedent in state and federal courts, that the Superior Court is not "suable *eo nominee* [in its own name]."  The Court should apply this precedent herein and find that the Superior Court for the District of Columbia is *non sui juris* and cannot be named as a defendant in this matter.[4]  Consequently, the Court should dismiss the plaintiff's Complaint against the defendant with prejudice.

**2.    THE PLAINTIFF DID NOT PROPERLY SERVE THE DEFENDANT.**

Fed. R. Civ. P. 4(j)(2) describes the proper manner of service of process on a governmental entity:

> …Service upon a state, municipal corporation, or other governmental organization subject to suit shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon such defendant.

In this case, David Luria, an attorney at the Court, was served on behalf of the Court. (Exhibit C.)  However, Mr. Luria was not authorized to accept service of process on behalf of either the Court or the District of Columbia.  Moreover, such service fails to comply with Fed. R. Civ. P. 4(j)(2) because there is no proof that a copy of the Complaint and Summons was even properly served on the Chief Executive Officer, *i.e.,* the Mayor.  For all of these reasons, the plaintiff's Complaint must be dismissed.

---

[4] Even if the Court determines that substitution of the District for the Superior Court is appropriate, the plaintiff still has not properly served the District.  *See* Part II, *infra*.

3.    **THE COMPLAINT DOES NOT SATISFY THE REQUIREMENTS OF FED. R. CIV. P. 8(a).**

Although the plaintiff's complaint is short, it does not include a "short and plain statement of the claim." Accordingly, it does not comply with Fed. R. Civ. P. 8(a) because it lacks *any* identification of a legal and/or statutory basis for the plaintiff's cause of action and/or claim of relief that would invoke this Court's jurisdiction. As a result, the defendant is without notice of the claims against it and the grounds for such a suit. Accordingly, the plaintiff's Complaint should be dismissed.

4.    **PLAINTIFF'S CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS.**

Significantly, the plaintiff's Complaint appears to allege that she was terminated on or around August 26, 1994 because she was hospitalized at the Bay Cove Mental Health Center from July 6, 1994 to August 16, 1994. However, even assuming that these facts are true for the purpose of this argument, the plaintiff's Complaint, which was filed in November 2006, over twelve years after her termination, is time-barred and well past any applicable statute of limitations.[5] Accordingly, the Court should dismiss the plaintiff's Complaint with prejudice.

5.    **PLAINTIFF'S CLAIM IS BARRED BY *RES JUDICATA*.**

In *Martin v. Malhoyt*, 830 F.2d 237, 264 (D.C. Cir. 1987), the United States Court of Appeals for the District of Columbia Circuit adopted the Supreme Court precedent that state administrative findings may have *res judicata* effect. "[W]hen … a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Martin,* 830 F.2d at 264 (D.C. Cir. 1987), *citing*, *University of Tennessee v. Elliott*, 478 U.S. 788 (1986) (other citations

---

[5] Notably, the plaintiff does not provide any reasons in her Complaint to explain the twelve-year delay.

omitted).  Accordingly, "[u]nder the rule of issue preclusion, 'when an issue of fact . . . is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment,' a party to the proceeding who had 'a full and fair opportunity to litigate the issue in the first action" is generally precluded from relitigating it in a subsequent action.'" *Id.*

Here, the plaintiff's claim is barred by *res judicata* because the D.C. Courts issued a final agency determination terminating the plaintiff's employment and the plaintiff never appealed the agency's decision by Mr. Hammond.  *See* Exhibits A and B.  Significantly, after the plaintiff was "given full opportunity to be heard, to present evidence, to examine and cross-examine witnesses, and to make oral argument," the Hearing Officer found that: "[f]rom June 22 to the date of her termination [in August 1994], [the plaintiff] did not report to work and was absent without leave."  (Exhibit A at Preliminary Statement, 6.)  In 1994, Ms. Baldwin had 553 hours of extended absence without leave.  (*Id.* at 7.)  The plaintiff did "not contest the fact that she was absent from work on the dates specified by the Court."  (*Id.* at 3.)  Even though the plaintiff claimed that she was hospitalized for bi-polar disorder, and submitted documentation verifying hospitalization for part of that time period, the Hearing Officer concluded that the plaintiff's termination "was legally justified and [there was] no procedural irregularity."  (*Id.* at 3, 7.)  This was particularly so because Personnel Policy No. 1001(n) "lists excessive tardiness or absence from work as employee actions warranting adverse action."  (*Id.*)

In response to the plaintiff's assertion that "she was terminated because she was sick and that the Court may not terminate her for such a reason," the Hearing Officer concluded that she cited "no legal authority for her position."  (*Id.*)  Simply, the plaintiff could not perform the essential functions of her job and the Hearing Officer concluded that an "employer is entitled to require that an employee be in attendance at work in order to perform the duties assigned to that

employee." (*Id.* at 8.)  Because the principal argument made by the plaintiff before the Hearing

Officer is the same argument that she is now making before this Court, *i.e.*, that she was

terminated due to her illness, this lawsuit concerns the same transactions and operative facts that

was before the state agency and is barred by *res judicata*.

6.        **THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION.**

Alternatively, even if the Court finds that the plaintiff's claim is not barred by the statute

of limitations and/or *res judicata*, there is no legal authority for a federal court to conduct a *de

novo* proceeding of a state administrative claim that was properly adjudicated by a state agency,

particularly where the plaintiff failed to exhaust her administrative remedies.  In *Martin v.

District of Columbia Courts*, 753 A.2d 987 (D.C. 2000), the District of Columbia Court of

Appeals reinstated Mr. Martin's petition for judicial review of his wrongful termination claim in

Superior Court.  The Court concluded that Mr. Martin, as a non-judicial court employee who

exhausted his administrative remedies pursuant to the D.C. Court's Comprehensive Personnel

Policies ("CPP"),[6] was entitled to such review in Superior Court, because the "*Superior Court

has jurisdiction to review adverse actions against nonjudicial court employees who have

exhausted their administrative remedies and who allege that the proceedings against them did not

comply with the requirements of the CPP.*"  *Id.* at 989 (emphasis added).  Undersigned counsel

has found no authority that would permit the plaintiff to appeal her termination in this Court,

particularly when there is no record evidence that she exhausted her administrative remedies to

have the Executive Officer's March 2, 1995, decision reviewed by Superior Court.  Absent such

authority, this Court does not have subject matter jurisdiction to review a state agency's final

decision that was not properly appealed to Superior Court for legal sufficiency review, as

---

[6] These are the same set of policies identified by Hearing Officer Jalette.

permitted by *Martin v. District of Columbia Courts. See e.g., Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1980).

WHEREFORE, the defendant respectfully requests that the Court enter judgment for the defendant and/or dismiss the plaintiff's Complaint with prejudice.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III




_____/s/_____
DANA K. DELORENZO
Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Gwendolyn Baldwin, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 06-1956 (GK) |
| v. | ) | |
| | ) | |
| Superior Court of the District | ) | |
| Of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Fed. R. Civ. P. 56, the defendant submits the following statement of undisputed material facts:

1.  The plaintiff was terminated as a non-judicial employee of the D.C. Courts, effective August 26, 1994.  (Complaint, generally.)

2.  The plaintiff subsequently appealed her termination, utilizing the procedures available to non-judicial courts employees, the Comprehensive Personnel Policies.  The Hearing Officer issued Findings of Fact, Conclusions and Recommendations on February 10, 1995 in *In the Matter of Adverse Action Appeal by Gwendolyn M. Baldwin*.  (Exhibit A.)

3.  Notably, at the hearing on the plaintiff's appeal, "both parties were given full opportunity to be heard, to present evidence, to examine and cross-examine witnesses, and to make oral argument."  (Exhibit A at Preliminary Statement.)

4.  Significantly, the Hearing Officer recommended that the plaintiff's August 27, 1994 terminated be upheld.  (Exhibit A at 8.)

5. The Hearing Officer made the following findings: "[F]rom June 22 to the date of her termination [in August 1994], [Ms. Baldwin] did not report to work and was absent without leave." (*Id.* at 6.) According to the record, in 1994, Ms. Baldwin had 553 hours of extended absence without leave. (*Id.* at 7.) Ms. Baldwin did "not contest the fact that she was absent from work on the dates specified by the Court." (*Id.* at 3.)

6. During the administrative hearing, the plaintiff claimed that she was hospitalized for bi-polar disorder and she submitted documentation verifying hospitalization for part of that time period. (*Id.*)

7. The Hearing Officer concluded that the plaintiff's termination based on her excessive absences "was legally justified and [there was] no procedural irregularity." (*Id.* at 7.)

8. The Hearing Officer also addressed Ms. Baldwin's position, namely that "she was terminated because she was sick and that the Court may not terminate her for such a reason." (*Id.*) However, he noted that the plaintiff cited "no legal authority for her position." (*Id.*)

9. At the administrative level, Ms. Baldwin also raised the issue of lack of notice. However, the Hearing Officer concluded that "the fact that [Ms. Baldwin] claims not to have received the memoranda addressed to her is immaterial [in that … ] the memoranda [about the plaintiff's termination] were addressed to [the plaintiff] at the address she had supplied as her place of residence. She was accordingly on constructive notice." (*Id.* at 7.)

10. The Hearing Officer's recommended decision was adopted and accepted by Ulysses Hammond, the Executive officer of the D.C. Courts on March 2, 1995. (Exhibit B.)

There is no record evidence that this final agency decision was appealed to Superior

Court.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia


GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III


_____/s/_____
DANA K. DELORENZO
Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Gwendolyn Baldwin, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 06-1956 (GK) |
| v. | ) | |
| | ) | |
| Superior Court of the District | ) | |
| Of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT</u>**

Upon consideration of the Defendant's Motion to Dismiss, any opposition thereto and the

facts and law considered, it is this _____ day of _____, 2006,

HEREBY ORDERED that the Defendant's Motion is GRANTED; and it is further

ORDERED that the case is DISMISSED WITH PREJUDICE.


_____
The Honorable Gladys Kessler
United States District Court Judge

15

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Gwendolyn Baldwin, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 06-1956 (GK) |
| v. | ) | |
| | ) | |
| Superior Court of the District | ) | |
| Of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Upon consideration of the Defendant's Motion for Summary Judgment, any opposition thereto and the facts and law considered, it is this ____ day of _____, 2007, hereby

ORDERED that the Defendant's Motion is GRANTED; and it is

FURTHER ORDERED that the case is DISMISSED WITH PREJUDICE.


_____
The Honorable Gladys Kessler
United States District Court Judge

# EXHIBIT A

BEFORE THE DISTRICT OF COLUMBIA COURTS

IN THE MATTER OF

ADVERSE ACTION APPEAL BY

GWENDOLYN M. BALDWIN

<u>Findings of Fact, Conclusions and</u>
<u>Recommendations of Hearing Officer</u>
<u>Henry L. Jalette</u>

<u>Preliminary Statement</u>

This is an adverse action appeal hearing pursuant to District of Columbia Courts Joint Committee on Judicial Administration Personnel Policy No. 1004 (b) (2). Gwendolyn M. Baldwin (hereinafter referred to as Appellant) seeks reversal of the decision by Ulysses B. Hammond, Executive Officer of the District of Columbia Court (hereinafter referred to as the Court) to terminate her employment with the Court. The undersigned Hearing Officer was selected pursuant to Personnel Policy No. 1005. Hearing opened on November 2, 1994, but was continued to a later date, pursuant to the Hearing Officer's decision to remand the case for reconsideration in light of the evidence adduced at the hearing. Thereafter, on January 4, 1995, Executive Officer Hammond accepted a renewed recommendation that the Appellant be terminated, and further hearing on the appeal was held on January 11, 1995. At the hearing, the Court was represented by David Luria, Esquire, and Appellant appeared <u>pro se</u>. ( On January 11, the Appellant left the hearing before its conclusion and the hearing continued without her. ) Both parties were given full opportunity to be heard, to present evidence, to examine and cross-examine witnesses, and to make oral argument. The Court waived the filing of a brief and none was filed by the Appellant.

Upon the entire record, and consideration of the arguments of the parties, the Hearing Officer makes the following:

<u>Findings of Fact</u>

Appellant was employed by the Court in 1988. At the time of her termination, she was a Probation Assistant. On June 22, 1994, (unless otherwise indicated all dates are in 1994) James Davis, Appellant's supervisor, wrote her a letter, addressed to her place of residence, expressing concern over her attendance and other matters, as follows:

1.      Appellant's failure to report to work on May 13, without notice;

2.      Her reporting to work one half hour late on May 19, and, after signing in, leaving her work

station without permission;

3.    Verbally assaulting a fellow employee on May 24;

4.    From May 31 to June 14, failing to report for work, and failing to offer any medical proof attesting to illness. As a result of this, Davis advised Appellant she was placed on Absent Without Leave status;

5.    On Wednesday, June 15, Appellant was in the office for only three hours and ten minutes;

6.    On June 16, Appellant was AWOL for two hours and failed to relieve a Probation Assistant for lunch;

7.    On June 17, Appellant was AWOL for seven hours, played her radio loudly, and failed to relieve a Probation Assistant for lunch;

8.    On June 20, Appellant was AWOL for five hours;

9.    On June 21, Appellant was AWOL for five and three quarter hours, and failed to relieve a probation Assistant for lunch;.

10.    On June 22, Appellant telephoned Davis to report she would be on leave for that day.

On the basis of these incidents, Davis advised Appellant she was being placed on AWOL status for all unauthorized absences noted above; that she was being placed on leave restriction, requiring advance approval of annual leave, and physician documentation of sick leave; that, while present for duty, she was required to notify Davis of any anticipated absences from her workplace exceeding fifteen minutes; that she was required to record actual time of arrival and departure on attendance and location forms; and that she was forbidden to play her radio in the workplace. Davis also advised Appellant she was being referred to the Employee Assistance Program. The letter concluded with a warning of serious consequences in the event of further or continued infractions. ( Court Exhibit 1 )[1]

On August 8, Davis wrote to Appellant again, noting that she had accrued a total of four hundred and seventeen hours of leave without authority as of the last pay period. He stated, " You have failed to contact me with regard to your intentions of reporting for work. This behavior is indicative of abandonment of employment. Please be further advised that my intention is to recommend that you be terminated from your

---

[1] The exhibits are marked as Plaintiff's and Defendant's, but are referred to as Court's and Appellant's respectively.

position, effective August 27, 1994." ( Court Exhibit 2 )

On August 9, Davis wrote a memorandum to Moses McAllister, Director of the Social Services Division, recommending the termination of the Appellant "Based on the apparent abandonment of job due to the excessive hours(417) amassed since her last day at work." ( Court Exhibit 3)

On August 16, McAllister wrote a memorandum to Executive Officer Ulysses Hammond, concurring in Davis' recommendation to terminate the Appellant. (Court Exhibit 4)

On August 18, Hammond concurred in the recommendation for Appellant's termination effective August 27, and a copy of the decision was sent to the Appellant with notification of her right to appeal. (Court Exhibit 5)

The record does not indicate when Appellant filed her appeal, but pursuant to an appeal, the instant hearing was opened on November 2. At the hearing, Appellant denied receiving notice of the intent to recommend her termination and of the decision to terminate her. According to Appellant, she only received notice on or about August 22, when she received copies from Personnel Director George Wright whom she met with on her return from Massachusetts. According to Appellant, when she advised him she had been sick, he told her he was trying to work with her and told her to bring in doctors' statements. Appellant stated that when she did so, she was told they were going to terminate her.

Appellant does not contest the fact that she was absent from work on the dates specified by the Court. However, she contends that her absence was not due to her abandonment of her employment, but rather was due to her illness; namely, a condition described as bipolar disorder, a condition which affected her ability to reason and function normally. Appellant submitted documentary evidence that during a substantial part of the period in question she was hospitalized. According to Appellant's Exhibit 1, she was hospitalized from May 27 to June 3. According to Appellant's Exhibit 2, on June 3, she was transferred to the Psychiatric Institute of Washington where she remained until June 10, when she left against medical advice. On June 15, she was seen by an orthopedic surgeon for neck and back problems.( Appellant's Exhibit 4 ) According to Appellant's Exhibit 8, she was hospitalized at Bay Cove Mental Health Center in Massachusetts from July 6 to August 16, 1994, for bipolar disorder, manic phase.

3

The assertions of the Appellant, if true, suggested to the Hearing Officer that the evidence of her illness and hospitalization was not considered by management in deciding to terminate her and the Hearing Officer adjourned the hearing, and on November 4, issued an Order of Remand to permit the Executive Officer to reconsider the decision to terminate the Appellant in the light of her contentions and the documentary evidence received at the hearing. In the judgment of the Hearing Officer, that evidence posed the questions whether the Court would have terminated the Appellant had the Court known of her illness and hospitalization, and, if so, on what grounds would she have been terminated.

Pursuant to the Order of Remand, supervisor Davis reconsidered the recommendation to terminate Appellant, and on November 14, renewed his recommendation she be terminated for the following reasons: " Even though I am in sympathy with Ms. Baldwin's health problems as evidenced by exhibits presented to the Court attesting to her health, I was totally unaware of such evidence. And in my opinion, she did in fact abandon her job. Ms. Baldwin has a history of not being predictable, she can not be depended upon to perform her assigned tasks with degree of regularity. Her lack of job interest drastically impacts on the timely submission of correspondence to the judiciary relating to probationers behavior, her lack of job interest also has an effect on the morale of team members, and she was insensitive to the needs of Pamela Davis, Probation Assistant, in relieving her for lunch periods. In addition, Ms Baldwin falsely submitted claims for job related injuries on May 27, 1994 and again on June 30, 1994. She was AWOL on these days." ( Court Exhibit 8 ) Davis' recommendation was forwarded to the Executive Officer with the concurrence of the Director of the Social Services Division.

On November 29, Appellant responded to Davis' recommendation as follows:
" To all Mr. Davis comments, I have no response, seven years with no write-ups speak for itself. Except two, first the probation officers generally relieved Pam Davis at lunch and any other time. My injuries were sustained in June, 1994. I have a handicap and at the time, dates are still confused to me, the injuries are not confusing. I feel and know I am being discriminated against because of my handicaps. If I should be awarded my job back through the courts system I would like to be relocated to another team. Just think when Mr. Davis was sick, I along with some of the other team members visited him at his home. For me being sick, he ordered me terminated, all because I'm a female handicap. I was terminated when sick, without the allowance of taking my medication, in order to clearly address the situation, in which I was not even being considered to be terminated until sick." ( Appellant's Exhibit 9 )

4

On December 2, Moses McAllister, Director of the Social Services Division, responded to Appellant's response as follows:

" This is to advise that this office received the attached letter from Ms. Baldwin on November 29, 1994. Her letter was in response to a memorandum from her immediate supervisor Mr. James Davis who essentially reaffirmed his earlier position that due to her lack of reliability, poor attendance, poor behavior and the hardship she continues to cause on the team his recommendation remains that she should be terminated. In her letter of response Ms. Baldwin says she has no response, seven years with no write-ups speak for itself. Except two, a careful review of our records (attached) does not support her position. She goes on to say that she was injured and sick and that time and dates are confusing to her.

" I have earnestly and carefully considered all of the facts in this case and while I have empathy for Ms. Baldwin and her health problems I am convinced at this point that this employee's continued employment would be detrimental to our clients and this Division. She continues to be a source of problems for her co-workers and management. Her sudden absences and complaints have been ongoing. Co-workers are reportedly afraid to approach her and are uncomfortable trying to work with her. Although management appears to never have gotten a clear understanding from Ms. Baldwin as to what her medical problems are they have continued to make various accommodations for her with vary little success. She was given a separate office area and relieved of ongoing contacts with our clients yet she could not be counted on to relieve her co-workers for lunch. Due to her various claims management at this point is not sure what duties if any she can perform. At times when given work to type she would just sit and peck at the typewriter with one hand." ( Court's Exhibit 10 ) ( The memorandum continued with reference to a memorandum from a former supervisor of the Appellant dated November 4, 1988, with regard to Appellant's inability to perform her normal duties. )

On January 4, 1995, the Executive Officer accepted the renewed recommendation to terminate Appellant. In his memorandum , he stated as follows:

" On December 21, 1994, I received your follow-up memorandum pursuant to my December 16, 1994 request for additional information concerning Ms. Gwendolyn Baldwin's most recent attendance record.

" The 1993 and 1994 attendance audit information you provided in your response confirms that Ms. Baldwin's attendance problems continued well after the 1988 and 1989 documented efforts to improve this situation. The documentation noted in your December 2, 1994 memorandum coupled with the December 21, 1994 audit displays an employee attendance record with no reliability and which can not be allowed to continue. Ms. Baldwin's unreliable attendance carried forward into 1993 and 1994 and led to her AWOL

5

situation in the summer of 1994.

" Your most recent documentation indicates that during 1993, in 25 of 26 pay periods, Ms. Baldwin had unscheduled absences. Her record displays no consistent attendance at her job. Your 1994 audit displays the same pattern of unreliability leading up to her AWOL status. As a result of this pattern, she had no earned leave to use during the summer of 1994.

" As I mentioned in my December 16, 1994 memorandum, there are tremendous pressures created in a Division when an employee is continually absent from work. Other staff are required constantly to assume the unmet responsibilities. Particularly during difficult fiscal conditions when every employee must do more with less, this is a situation that cannot continue. Probation workers are required to meet judicially imposed responsibilities that cannot accommodate grossly inconsistent attendance. It is evident from your documentation that the Court had long past the point of tolerance with Ms. Baldwin's attendance prior to her going into an AWOL status. Employers have the right to reliability in attendance which Ms. Baldwin's record has abused.

" In addition, as I mentioned in my December 16, 1994 memorandum, it is apparent from the provided memorandums, that the Division supervisors have made an exhaustive effort to accommodate Ms. Baldwin's poor attendance and performance over the years. In spite of these efforts, Ms. Baldwin continued to display no improvement in her attendance or ability to perform duties necessary to her job.

" On December 6, 1994, you submitted your recommendation to terminate Ms. Baldwin in response to Hearing Officer Jalette's order of remand. This recommendation noted several memorandums detailing the Division work problems that Ms. Baldwin's absences created over the years. Your termination recommendation is based not only on her abandonment of her position, but also her long history of attendance abuses. Ms. Mosley's 1988 and Mr. Porter's 1989 memorandums are offered as documentation to support this position. Your follow-up December 21, 1994 audit of her 1993 and 1994 attendance confirm the continuation of the problem.

" For the reasons cited above, I accept your renewed recommendation to terminate Ms. Baldwin. "

## Discussion and Findings

The record in this case indicates quite clearly that from June 22 to the date of her termination, Appellant did not report to work and was absent without leave. This is unquestionably ground for termination, and little discussion of the termination would be required had the termination been effected in a more straightforward manner. To begin with, Appellant was initially terminated for abandoning her job. The

6

record does not support such a conclusion. To abandon means " to leave completely and finally; forsake utterly: desert; ..." The Random House Dictionary of the English Language  There is no evidence whatsoever that Appellant at any time intended to abandon her job. Faced with this difficulty in its position, the Court thereupon predicated the termination on Appellant's attendance record. Were this a case involving an allegation of unlawful discrimination, the shift of position would permit an inference that the termination was unlawfully motivated. However, there is no evidence of any motive to terminate Appellant for any unlawful motive. Also suggestive of an unlawful motive is the belated reliance of the Court on the Appellant's attendance history in the somewhat distant past. The Hearing Officer deems it belated, because when Davis warned Appellant in his June 22 memorandum he was very specific in his criticism and did not include Appellant's past history. Nor did he recommend her termination for her conduct up to that date.

The foregoing circumstances in the handling of Appellant's termination have been problematic for the Hearing Officer. In the final analysis, however, the Hearing Officer is governed by the Adverse Action and Appeal Procedure Policy No. 1009 which provides, in relevant part, that " Before submitting a recommendation for reversing or modifying the sanction imposed, there must be a finding: a) the sanction was not legally or procedurally justified; or, b) that management abused its discretion imposing the sanction. Absent one or the other of these findings, the Hearing Officer should not substitute his/her judgment for that of management."

In conformity with this limited scope of review, the Hearing Officer finds that the termination of Appellant was legally justified and finds no procedural irregularity. As to the matter of procedural regularity, the Hearing Officer finds that the fact the Appellant claims not to have received the memoranda addressed to her is immaterial. As supervisor Davis testified, the memoranda were addressed to Appellant at the address she had supplied as her place of residence. She was accordingly on constructive notice. As to legal grounds for termination, it is undisputed that in 1993 and 1994, the Appellant's record of attendance was exceedingly bad. As noted in Court Exhibit 11, her attendance patterns generally absorbed most or all of her annual and sick leave on an ongoing basis culminating in 1994 with 553 hours of extended AWOL. The fact that the Court did not terminate her at an earlier date for her poor attendance did not preclude it from doing so upon reconsideration. Personnel Policy No. 1001 n) lists excessive tardiness or absence from work as employee actions warranting adverse action. In the circumstances, Appellant's termination is consistent with the Court's Personnel Policies.

Appellant's position is that she was terminated because she was sick and that the Court may not terminate her for such a reason. Appellant cites no legal authority for her position. For example, she does not contend that the Court was precluded from terminating her under the Americans with Disabilities Act. In any

7

event, this is not the proper forum for the enforcement of rights under that Act, and, moreover, in the judgment of the Hearing Officer, that Act did not preclude the Court from terminating the Appellant. Whatever accommodation an employer may be required to make because of an employee's disability, he is not required to continue in employment an employee who is excessively absent from work. In short, the Hearing Officer finds no support in law for the Appellant's position. Contrary to her assertion, she was not terminated because she was sick. She was terminated for not reporting for work. The reason she did not report is immaterial. An employer is entitled to require that an employee be in attendance at work in order to perform the duties assigned to that employee.

## Recommendation

Based on the foregoing findings, it is the recommendation of the Hearing Officer that the termination of the employment of Gwendolyn Baldwin effective August 27, 1994, Be Upheld.

February 10, 1995
Date

Henry Z. Jalett
Henry L. Jalette
Hearing Officer

8

# EXHIBIT B





**District of Columbia Courts**
500 Indiana Avenue, N.W.
Washington, D. C. 20001

Ulysses B. Hammond
Executive Officer

March 2, 1995

Ms. Gwendolyn Baldwin
832 Taylor Street, N.E.
Washington, D.C.  20017

                    via:  Certified Mail - Return Receipt Requested

Dear Ms. Baldwin:

    Enclosed, for your information and review, is the hearing officer's findings of fact, conclusion and recommendation on your adverse action appeal.

    It is the recommendation of the hearing officer in this matter that the termination of your employment effective August 27, 1994, Be Upheld.  In accordance with the District of Columbia Courts Comprehensive Personnel Policy 1011(a), I carefully considered the record of the hearing and the recommendation of the hearing officer and I accept his recommendation.

                         Sincerely,

                         Ulysses B. Hammond
                         Executive Officer


Enclosure

c:  Moses McAllister
    George L. Wright
    David Luria

# EXHIBIT C

Case 1:06-cv-01956-GK    Document 8    Filed 11/27/2006    Page 1 of 1

**U.S. Department of Justice**
**United States Marshals Service**

**PROCESS RECEIPT AND RETURN**
See Instructions for "Service of Process by the U.S. Marshal"
on the reverse of this form.

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| Gwendolyn M.Baldwin | CA-06-1956 GK |
| DEFENDANT | TYPE OF PROCESS |
| The Superior Court of DC | S&C |

| SERVE ➡ | NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN |
|---|---|
| | Superior Court of the DC |
| | ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code) |
| AT | H.Carl Moultrie I.Courthouse    500 Indiana Ave.,NW |

| SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW: | |
|---|---|
| | Number of process to be served with this Form - 285 |
| | Number of parties to be served in this case |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):
Fold                                                                                                    Fold

RECEIVED

NOV 2 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| Signature of Attorney or other Originator requesting service on behalf of: | ☐ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER | DATE |
|---|---|---|---|

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin No. 16 | District to Serve No. 0 | Signature of Authorized USMS Deputy or Clerk | Date 11/7/06 |
|---|---|---|---|---|---|

I hereby certify and return that I ☑ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below)

| Name and title of individual served (if not shown above) | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|
| David Luria    Attorney Advisor | |
| Address (complete only if different than shown above) | Date of Service 11/21/06 | Time 1400hrs pm |
| | Signature of U.S. Marshal or Deputy  #7495 |

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or | Amount of Refund |
|---|---|---|---|---|---|---|
| $45.00 | | | $45.00 | | | |

REMARKS: